We'll move on to the next case. I hope I'm pronouncing this correctly. Sernas v. Cantrell, the warden. Audre Miller, representing Mr. Adam Sernas, the issue on appeal is whether a reasonable jury can find that it is more likely than not that defendant appellees deliberate indifference in their failure to conduct an adequate investigation into Mr. Sernas' warnings of likely assault by undue force. The trial court already found that there were genuine issues of material fact with respect to Mr. Sernas' demonstration of the fact that assault by unknown persons within the   case of the harm, that the harm that Mr. Sernas suffered was sufficiently serious, that defendants were placed, that defendants were deliberately indifferent to Mr. Sernas' safety in their inactions in conducting an adequate investigation. Sotomayor I think what the district court said, there's a reasonable fact finder could conclude what you just described, that they may have acted with deliberate indifference, knowing the potential threat, and that they didn't investigate it adequately, that a reasonable fact finder could find that. The sort of underside of that is a reasonable fact finder could find to the contrary. What the district court seemed to rely upon was the fact that your client could not identify either who approached him when he was returned to the unit or who actually attacked him. Can you deal with that, please? Absolutely, Your Honor. Under Farmers v. Brennan, the identity of the threat does not need to be known. In Farmers, we had a sort of nebulous threat from, you know, a known rather nebulous threat, and we had assailants. The identity in that case, I believe the identity of the assailants was known. Here it's not, and it could not be. However, the — it does not have to be under Farmers v. Brennan because the defendants knew of the risk of harm. A reasonable trier of fact can find from the circumstances that are in evidence that there is a causal nexus between the harm that was threatened, which they can certainly find, and certainly they can find the other way, too. But they can find that the harm threatened was, you know, was unreasonably — unreasonable and excessive. And they can also find that there's a causal nexus between that harm and the harm that Mr. Cernas actually suffered. I take it, and correct me if I'm wrong, that there are no cases out there that say that the mere fact that a person in this situation cannot identify their assailant is fatal to the claim. Is that correct? I was unable to find any. From your research? Yes, Your Honor. I was unable to find any. Well, ask the same question of the other side, but — go ahead. But there's no case that says, or is there, that that's a requirement? No, Your Honor. There's no case that is completely on all fours that I was able to find in this situation. I have — I did find cases that were unpublished that applied Farmer somewhat to cases where, if you'll — The cases that come to my mind are Farmer, I think, is a pretty good case for you. Right. There's also this case called Berg. Yes. Berg v. Kennecho was also somewhat on point because there the identity of the assailant was also — in Berg, the standard did not require the guard or the official to believe to a moral certainty that one inmate intended to inflict attack — intended to attack another at a given place or time. So, there again, we don't need to know which inmate needs to attack the other inmate. There's not necessarily anything that I found on point where the ultimate identity of the attacker was unknown. However, we do know there are facts and evidence from which a reasonable jury could find that there is a causal nexus between an unknown assailant and a risk of some kind. And so, I think it's important to think about how the threatened harm can be linked to — you know, you don't necessarily need to know the identity of the informant or the identity of the potential attackers or the actual attackers from the inmate who is attacked or threatened in order — you know, the prison officials don't need to know that. They know very, very well that the inmate population has its own rules about snitches, about — there's this protocol within there that our — that Mr. Adams was talking about during his deposition. I imagine the analogy — well, the analogy that comes to my mind is if I'm in prison and a kite comes underneath my door saying, you know, if you come to the lunchroom, we're going to get you. And I have no idea who sent that to me. But I know if I go to the lunchroom, they're going to get me. And so, if I give that kite to the guards and they say, well, time to go to the lunchroom, even though I don't know who it is, the guards are on notice of some kind that something very bad might happen to me if I go to the lunchroom. I mean, that seems like — that is this case, isn't it? That is exactly this case, Your Honor. And if the guards then drag me kicking and screaming to the lunchroom and somebody attacks me from behind and hits me in the eye and I never actually see who the attacker is, well, the guards certainly do — a reasonable jury could certainly find that the harm is linked even if the identity of the attacker is never known. Because it seems to me that the better the attacker is, the less likely you could bring the claim because if they put a bag over your head and hit you in the back of the head with a sock full of batteries, I'm not going to know who attacked me. But if they're sloppy about it, then I would. It seems to me that that can't be the determination whether this case goes forward or how good the attackers were. Right, Your Honor. The attackers — the identity of the attackers is not the important part here. The identity — the question at issue is whether a reasonable jury can find that, you that it's more likely than not that the unreasonable risk of harm is related to the attack that happened as soon as the action that Mr. Cernas said would happen if they placed him in general population happened. Fifteen minutes after being placed in the general population, he was attacked just like he said he would be. Your Honor, I forgot to address at the beginning. May I save the — Oh, yeah. Absolutely. Do you want to reserve?  Thank you, Your Honor. Good morning, Your Honors. May it please the Court, my name is Adam Poulsen. I represent appellees Deputy Warden Kathy Cottrell and Corrections Officer Lisa Collars. Appellant cannot identify who asked him to hold on to drugs or who hit him. However, he knows enough to say that the groups are not the same. He admits that the people who asked him to hold on to drugs are not the same people that later hit him, and he cannot prove that the reason he was attacked was related to his refusal to hold drugs. It is unfortunate that appellant was assaulted. However, he cannot show that appellees were deliberately indifferent to him. Do you agree there's no case law saying the mere fact that he cannot or would not identify his assailants is fatal to his claim? There's no case — Can you start with a yes or no? There's no case directly a point on that, but the issue here is that the district court was correct that there's no causal link. There's no proximate causal link here. We don't know why appellant was hit. What's missing in this case from establishing proximate cause? What more is needed? We have to look at what the original foreseeable risk was. And at that point, he was — appellant was saying that he was afraid because three or four people that he could not identify over the course of a year asked him to hold on to drugs. That's the original foreseeable risk here. But we're here on a district court determination, as we learned in your friend's argument, the district court determining that a reasonable fact finder could determine that your right? That's what the district court held. Is that wrong? No. You're correct, Your Honor. We did concede that for purposes of this appeal. But that's not the issue that we see here, because appellant's position is that the group that threatened him is different from the group that hit him. Even — that's the issue that we see here. Of course, he — appellant knows — Why would that disparity, in fact, be fatal to his claim as a matter of law? Because he knows enough to know that these groups are different. The groups that asked him to hold on to drugs are very different than the group that — Maybe he's afraid of both of them. Well, that was an argument that was brought up in the briefing here. That's not what he testified to. There are procedures if — you know, to add someone to a do-not-house-with list, all sorts of mechanisms in prison to protect someone in those circumstances. But he did not — the record below — before us is not him saying, I know who it is, and I'm afraid to reveal those people. Go ahead. Appellant — he did not provide any relevant information after he was hit. He did not say he was provided the movement board. He could not identify who it was that hit him or the people that led to the assault. The movement board is referred to several times in the briefing, but I'm not exactly certain what that's supposed to show. Is that like a board of photographs or what? Yes, Your Honor. That's my understanding. So he was — after the assault, you know, it would be a criminal issue. The investigators tried to ask him and try and identify who was involved in this, either who hit him or who was part of the sequence that told him where to go. Maybe he's afraid if he identifies them that he'll get attacked again. Well, that's why I mentioned, Your Honor, that's why we have do-not-house-with lists, all sorts of protections for these situations. Certainly, if there was a criminal act that took place here and these inmates were the inmates that attacked him — What you're saying is that if this went to a jury, a reasonable jury could conclude that he didn't want to identify these people for some internal reason to himself personally, and therefore he should not recover. That's entirely possible. That's an argument. It's not part of the record so far. But again, Your Honor, we have to look at what the original foreseeable risk was and what the officers knew. Well, if it went back to a jury, there would be a full evidentiary presentation, correct? Conceivably, yes, Your Honor. And maybe a reasonable jury concludes that he's lying when these pictures are shown to him and he won't identify either the people that approached him or the people that actually attacked him. And if that's the result, you win, the other side loses. Here the district court was correct in finding the evidence was too thin to let this even get to a jury. And that's, I think, the correct approach here because we cannot show — If we look at the original foreseeable risk, we know about drugs. That's what was presented. And the evidence of why he was hit is not related to drugs per appellant. He's given up on that issue because he says these groups are not related. They're not the same. He doesn't know who is in either group. That's his testimony. But he knows they're not the same people. So there's no connection between those two subsets of groups. Is it possible that appellant was attacked for some other reason that we don't know, which is what the court supposed? Yes. Is it possible that, you know, appellant started a fight? You know, honestly, we don't know. And the reason is because appellant has not provided any information here. If those things are true, a reasonable fact finder would rule in your client's favor. I would hope so, Your Honor. But I think the district court was correct in finding there was no evidence even to get to a trial on this because there was really no evidence. Again, the appellant knew enough that knows that these groups are not connected, and that's the issue that the district court found here on that issue. Again, the appellant said leading up to this, while he was in the Refused Housing Unit, it was three or four people of different ethnicities, different heights, couldn't identify tattoos, couldn't identify anything about those people. But he said that the people that attacked him were entirely different. And the people that showed him the maze of where to go to when he was hit were different. And he couldn't identify either group. And that's the issue in the case here is that there's just not enough evidence here to proceed to a trial on that issue. Ms. Miller mentioned Farmers and Berg. I think those cases are a little bit distinguishable on these issues. On Berg, we know in Berg the fifth defendant, we know who that was. It was a cell partner. And if we had even that information here, there could be maybe an issue of fact here. In Brennan, the Farmers v. Brennan, this inmate, D Farmer, was vulnerable to the entire population. In our case here, the foreseeable risk relates to three or four inmates of different ethnicities that asked plaintiff or appellant to hold on to drugs, and he refused to do so. So I think those cases are very distinguishable here, that they're not relevant to this analysis on this exact issue. Again, there was some comment about snitches. Again, if their appellant had a choice, and of course the prison's there to help, add people to Do Not House With list, which appellant already had people on his Do Not House With list. He's been in prison for 19 years, I believe, right now. He knows how the system works. Certainly if there was somebody that he was afraid of, we could identify those people and make sure that appellant is not housed with them. The other issues here, I think there was a comment about investigation. Again, I think that that issue is not relevant here because the issue really relates to the foreseeable risk here. And that issue is, again, appellant cannot identify these two people. He cannot make a connection to those two people, these two sets of groups. He was given the opportunity to identify people in these two groups. He did not. In fact, on the first group, he says it was people that were asking him to hold onto drugs over the course of almost a year. So he had multiple opportunities in that year to identify who was threatening him and seek protection. And he chose not to do that for whatever reason. He's not vulnerable to the entire population. He's vulnerable maybe to three or four people. And that was at least the risk that was known prior to appellant leaving, refused to house the housing unit. I see my time's up. Is there any more questions? Can I ask a quick representational question? You're not with the Arizona Attorney General's Office? I am not. I'm a private law firm. Okay. And how did you come to defend this case? Just a matter of interest. Yeah. You know, I think there's my personal opinion on this. I think sometimes it's hard to find their staffing issues, so sometimes a lot of cases get kicked out to other law firms.  Good for you. Okay. Thank you. Thank you. Thanks for your argument. I want to address the issue of whether this was the same people who, between who made the threats and who attacked Mr. Cernas. They don't, first of all, they don't have to be the same people to be related. My colleague here has implied that these are completely unrelated attacks and that Mr. Cernas admitted that. He absolutely did not. And, in fact, if we look at 3 ER 294, he's talking about a general amount of hatred towards him at line 19 there. They, as in many people of a nebulous group in the general population, he speaks to his friends' argument that by failing to identify, even when shown pictures and names, et cetera, who his assailants were, it deprived the institution and its officials from the ability to sequester him, place him in different places, et cetera. How do you respond to that? That's certainly an inference that the jury could draw. The jury could also draw the reasonable inference that because my friend, you know, my friend pointed out that these, you know, that we don't know why he was attacked necessarily and that these groups that, my thing's flashing. The jury could draw the inference that the groups are identifiable and whether or not Mr. Cernas positively identified anybody and the defendants are attempting to use their own deliberate indifference as a shield. Both are possible and both are jury questions. All right. Thank you, counsel. Thank you very much to both of you for your argument. Interesting discussion and interesting about client development in the prison world. I had no idea.
judges: HAWKINS, TASHIMA, OWENS